NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THOMAS SYPNIEWSKI, JR., et al.,

              Plaintiffs,

    v.

WARREN HILLS REGIONAL BOARD
OF EDUCATION, et al.,

             Defendants.

CIVIL NO. 01-3061 (TJB)

**OPINION AND ORDER**

**BONGIOVANNI, United States Magistrate Judge**

    This matter comes before the Court upon Motion by Plaintiffs Thomas Sypniewski, Jr., Matthew Sypniewski and Brian Sypniewski (hereinafter "Plaintiffs") for Attorneys' Fees. [Docket Entry #91]. Defendants Warren Hills Regional Board of Education, Superintendent of Warren Hills Regional Board of Education Peter Merluzzi, Principal of Warren Hills Regional High School Beth Godett, Vice Principals of Warren Hills Regional High School Ronald Griffith and Phillip Chalupa, and members of the Warren Hills Regional Board of Education Elizabeth Ames, Marcy Matlosz, Ray Busch, Suyling Heurich, James T. Momary, Nancy Fallen, William Miller, Bradley Breslin and Scott Schantzenbach (hereinafter "Defendants") oppose the Motion. For the reasons given below, Plaintiffs' Motion for Attorneys' Fees shall be GRANTED IN PART.

## I.    PROCEDURAL HISTORY

    Plaintiffs filed the underlying civil action by Complaint on June 25, 2001, pursuant to 42 U.S.C. § 1983. (Civil Action Docket, Docket Entry #1). Plaintiffs amended their Complaint

on May 2, 2002.  (*Id.* at #34).  The construct of Plaintiffs' Amended Complaint was as follows: Count I - (i) declaration that the Dress Code was unconstitutional; (ii) preliminary and permanent enjoinment against Defendants from enforcing Dress Code; (iii) requiring Defendants to rescind Plaintiff Thomas Sypniewski's suspension from school and the removal of suspension from record; and (iv) damages and attorneys' fees - Count II - (i) declaration that the Harassment Policy was unconstitutional; (ii) preliminary and permanent enjoinment against Defendants from enforcing Harassment Policy; (iii) requiring Defendants to rescind Plaintiff Thomas Sypniewski's suspension from school and the removal of suspension from record; and (iv) damages and attorneys' fees - Count III - (i) declaration that the Dress Code and Harassment Policies were federally unconstitutional as applied to Plaintiffs' T-shirt; (ii) preliminary and permanent enjoinment against Defendants from enforcing Dress Code and Harassment Policies as against Plaintiff's T-shirt; (iii) requiring Defendants to rescind Plaintiff Thomas Sypniewski's suspension from school and the removal of suspension from record; and (iv) damages and attorneys' fees - Count IV - (i) declaration that the Dress Code and Harassment Policies violated the New Jersey Constitution; (ii) preliminary and permanent enjoinment against Defendants from enforcing Dress Code and Harassment Policies; (iii) requiring Defendants to rescind Plaintiff Thomas Sypniewski's suspension from school and the removal of suspension from record; and (iv) damages and attorneys' fees - Count V - defamation - Count VI - false light/invasion of privacy.  (Amended Complaint).

On September 7, 2001, the District Court denied Plaintiffs' request for preliminary injunctive relief.  (*Id.* at #22).  Plaintiffs appealed and a stay of discovery was entered.  (*Id.* at #28).  On October 3, 2002, the Third Circuit Court of Appeals reversed in part and held that

2

Plaintiffs were entitled to preliminary injunctive relief and that the portion of Defendants'

Harassment and Dress Policy prohibiting the possession of materials which created "ill will" was

overbroad.  (See <u>Sypniewski v. Warren Hills Regional Board of Education</u>, 307 F.3d 243 (3d Cir.

2002).  Defendants' subsequently altered their Dress Code and Harassment Policies in

conformance with the findings of the Third Circuit and preliminary injunctive relief was issued.

The preliminary injunction and the alteration of Defendants' Harassment and Dress Policies

remain in force today.

On April 8, 2003, Defendants petitioned for a writ of certiorari from the United States

Supreme Court.  (Civil Action Docket, Docket Entry #39).  The petition was denied on June 4,

2003.  (*Id.* at #40).

On October 5, 2004, Plaintiffs moved for partial summary judgment.  (*Id.* at #50).  On

February 7, 2005, the Honorable Mary L. Cooper, U.S.D.J., entered an Order granting in part and

denying in part the Motion for Partial Summary Judgment.  (*Id.* at #63).

On September 23, 2005, the District Court approved the parties' motion to consent to

Magistrate Judge's jurisdiction pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. 73.  (*Id.* at

#80).

On November 4, 2005, Plaintiffs' filed a Motion to Dismiss.  (*Id.* at #82).  Specifically,

Plaintiffs' moved to dismiss without prejudice for mootness Counts III and IV of their Amended

Complaint to the extent that they sought declarations that the Dress Code and Harassment

Policies were unconstitutional under the United States Constitution (Count III) and New Jersey

Constitution (Count IV) and invalid as applied to Plaintiffs' T-shirt, and to the extent that they

sought a permanent injunction preventing Defendants from enforcing the Dress Code and

Harassment Policies against Plaintiffs' T-shirt.  (Plaintiffs' Motion to Dismiss).

Plaintiffs argued that at the time they commenced the civil action, each had standing as they then faced a real and immediate threat that they would be subjected to Defendants allegedly unconstitutional practice.  However, Plaintiffs asserted, all had graduated from Defendants' school system, and were no longer in danger of being subjected to said practice.  Plaintiffs argued that as such, they were required to advise the Court that they no longer had standing to seek any permanent injunctions or declarations against the denial of Plaintiffs' rights to wear certain articles of clothing.  (*Id.*)

Plaintiffs additionally moved to voluntarily dismiss with prejudice pursuant to F.R.Civ.P. 41(a)(2) Counts I, II, III, and IV to the extent that each sought an award of damages to Plaintiffs, as well as Counts V and VI, which sought defamation and false light damages resulting from Defendants alleged conduct.  Plaintiffs argued that at the time the civil action commenced, Plaintiff Thomas Sypniewski believed that he had been damaged by Defendants alleged conduct. At the time of the Motion to Dismiss, however, Plaintiff Thomas Sypniewski's life had "moved on" and was able to "overcome much of the effect of the Defendants conduct and libel, reducing his provable damages [and as such] no longer believe[d] that pursuing [the civil action] would warrant the cost and time of trial, further pretrial proceedings, and likely appeal."  (Plaintiffs' Motion to Dismiss,  p. 2).

Defendants responded to Plaintiffs' Motion to Dismiss and stated that they did not oppose the dismissal of Counts V and VI of Plaintiffs' Amended Complaint which alleged defamation and false light, or the portions of Counts I through IV of Plaintiffs' Amended Complaint which requested declaratory judgment and/or injunctive relief.  Defendants submitted that they did object to the dismissal of Counts I through IV of Plaintiffs' Amended Complaint to the extent

4

that they alleged damages resulting from Defendants' alleged violations of the federal and state constitutional rights of Plaintiff Thomas Sypniewski.  (Defendants' Opposition to Plaintiffs' Motion to Dismiss).

Defendants argued that they had expended significant time and financial resources in defense of Plaintiffs' suit.  Defendants further argued that they continued to seek a formal determination by a jury as to whether Plaintiff Thomas Sypniewski's constitutional rights were violated.  (*Id*.)

On January 26, 2006, this Court filed an Opinion and Order granting Plaintiffs' Motion to Dismiss.  (Civil Action Docket, Docket Entry #90).  The civil action was thereafter terminated. (*Id.*)  On March 20, 2006, Plaintiffs filed the instant Motion for Attorneys' Fees.  (*Id.* at #91). Defendants have opposed.  (*Id.* at #92).

## II.    PLAINTIFFS' MOTION

Plaintiffs seek attorneys' fees in the amount of $710,871.49.  (Plaintiffs' Motion for Attorneys' Fees, p.1).  Plaintiffs assert that the underlying civil action was commenced to protect their First Amendment rights.  (*Id.*)  Plaintiffs further assert that the primary relief they sought was obtained in the form of preliminary and permanent injunctions which prevented Defendants from sanctioning Plaintiffs for wearing the T-shirt in question and prevented Defendants' enforcement of portions of the Warren Hills Regional High School Dress Code and Racial Harassment policy.  (*Id.*)

Plaintiffs argue that they are authorized to seek and receive reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b).  (*Id.* at 9).  Plaintiffs further argue that they are the "prevailing party" as that phrase is defined in United State Supreme Court and lower court holdings.  (*Id.* at 10-13).  Plaintiffs offer summaries, affidavits and other documentation in support of the amount

5

they request.  (*Id.* at 13-34).

## III.   DEFENDANTS' OPPOSITION

Defendants oppose Plaintiffs' Motion for Attorneys' Fees and argue that Plaintiffs fail to satisfy the factors necessary to be considered the prevailing party.  (Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees, p. 18).  Defendants further argue that Plaintiffs' Motion should be denied because they voluntarily dismissed their case.  (*Id.* at 25).  Defendants further argue that if attorneys' fees are given, the amount given should be minimal and/or significantly reduced as the amounts claimed by Plaintiffs are excessive.  (*Id*. at 28-32).  Defendants counter by arguing that because costs and attorneys' fees are often imposed upon plaintiffs who voluntarily dismiss their case, Defendants should be awarded attorneys' fees, or at least a deduction in the amount of Defendants' costs.  (*Id.* at 32-33).

## IV.   COURT'S ANALYSIS

### A.   <u>Determining Whether to Award Attorneys' Fees to Plaintiffs</u>

### i.   Legislative History

Under the "American Rule," parties are typically responsible for their own attorneys' fees.  <u>See</u> <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240 (1975).  However, the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988(b) authorizes an order for such fees.  It provides, in relevant part: "[I]n any action or proceeding to enforce a provision of section . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Legislative history reflects that the "primary purpose of § 1988(b) is to give private citizens who might not otherwise be able to afford it an opportunity to vindicate important constitutional rights."  <u>LRL Properties v. Portage Metropolitan Housing Authority</u>, 914 F.Supp.

188 (N.D. Ohio, 1995).  Therefore, "[a] party seeking to enforce the rights protected by [§ 1983],

if successful, should ordinarily recover an attorney's fee unless special circumstances would

render such an award unjust."  Hensley v. Echerhart, 461 U.S. 424, 429 (1983) (citing

Sen.Rep.No. 94-1011, 2-5, (1976) (reprinted in 1976 U.S. Code Cong. & Ad. News, 5908, 5912).

> ii.     **Special Circumstances**

Claims of "special circumstances" which have been successful within the court system

include cases where a decision for the plaintiff was reversed in a higher court and cases involving

nuisance settlements.  Dahlem v. Bd. of Educ., 901 F.2d 1508, 1512, 1514 (10th Cir. 1990); Tyler

v. Corner Constr. Corp., 167 F.3d 1202, 1206 (8th Cir. 1999).  Claims of special circumstances

which have been unsuccessful within the courts include claims based on the defendant's

willingness to enter into an early settlement (Barlow-Gresham Union High Sch. v. Mitchell, 940

F.2d 1280 (9th Cir. 1991)), the lawsuit's conferring a private benefit on the plaintiff but no larger

public benefit (Wheatley v. Ford, 679 F.2d 1037 (2d Cir. 1982)), the plaintiffs' ability to pass

their litigation costs on to consumers (Am. Booksellers Ass'n v. Virginia, 802 F.2d 691, 697 (4th

Cir. 1986)), the plaintiff's proceeding in forma pauperis while benefitting from court-appointed

counsel (Starks v. George Court Co., 937 F.2d 311, 315-16 (7th Cir. 1991)), the failure of a

consent decree to mention fees (El Club del Barrio, Inc. v. United Cmty. Corp., 735 F.2d 98,

100-01 (3d Cir. 1984)), an award of injunctive relief only (Crowder v. Hous. Auth. of Atlanta,

908 F.2d 843, 848-49 (11th Cir. 1990)), a third party's financing the plaintiffs' suit (Am. Council

of the Blind v. Romer, 962 F.2d 843, 848-49 (11th Cir. 1990)) (overturned on other grounds), and

the routine nature of the case  (Staten v. Hous. Auth. of Pittsburgh, 638 F.2d 599, 605 (3d Cir.

1980)).

### iii.    Prevailing Plaintiff

A prevailing plaintiff in a civil rights action, "must obtain at least some relief on the merits of his claim.  The party must obtain an enforceable judgment against the defendant from whose fees are sought . . . or comparable relief through a consent decree or settlement . . . [w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.  Otherwise the judgment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff."  Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).  Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party.  (Id.)  "In short, a Plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  (Id.)

The Third Circuit has offered additional guidance in determining whether a plaintiff is prevailing, in the form of a two-part test.  Specifically, in considering whether a plaintiff is prevailing, a court must determine: (1) whether the requesting plaintiff has obtained relief on a significant claim in the litigation; and (2) whether there is a causal connection between the litigation and the relief obtained.  Holmes v. Milcreek Township Sch.Dist., 205 F.3d 583, 593 (3d Cir. 2000).  Complete and exacting success is not required to satisfy the first prong. "Plaintiff's will be prevailing parties even [if] the relief they obtained is not identical to the relief they specifically demanded . . ."  Institutionalized Juveniles v. Sec'y of Pub.Welfare, 758 F.2d 897, 912 (3d Cir. 1985).  However, a plaintiff must show that the relief obtained caused a material alteration in his legal relationship with the defendant and that this alteration is not merely technical or de minimis.  Holmes at 593.

8

### iv.    Prevailing Defendant

A prevailing defendant, on the other hand, may only be awarded attorneys' fees pursuant to 42 U.S.C. § 1988(b) when the plaintiff's civil rights claim is "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christianburg Garmet Co. v. EEOC, 434 U.S. 412, 422 (1978).

### v.    Plaintiffs are Prevailing

In support of their Motion for Attorneys' Fees, Plaintiffs assert that their § 1983 litigation ended successfully.  Plaintiffs argue that they were rewarded the relief sought in Counts I, II and III of the Amended Complaint and that those counts constituted the "crux" of said complaint. (Plaintiff's Motion, p. 7).  Plaintiffs further argue that the remaining relief sought constituted: (1) an effort to make permanent the preliminary injunction previously granted, which was motioned for dismissal as moot because Plaintiffs had graduated from Defendants' schools and which was ultimately granted by this Court; and (2) relief regarding damages from Defendants' conduct including claims of defamation which were motioned for voluntary dismissal without prejudice by Plaintiffs as said Plaintiffs no longer wished to continue the lawsuit and which was also ultimately granted by this Court.  Plaintiffs further argue that a voluntary dismissal does not negate their prevailing party status.  As such, Plaintiffs contend they have satisfied the first prong necessary to establish themselves as the prevailing party.  (Id. at 7, 11).

Plaintiffs further assert that the causation prong of the test has also been satisfied as Defendants did not voluntarily accede to Plaintiffs' request for revisions of the Harassment Policy and Dress Code, or for the right to wear the T-shirt in question without sanctions.  (Id. at 11).

9

Plaintiffs final argument is that no special circumstances exist that would negate the presumption for attorneys' fees.  (*Id*. at 13).

Defendants assert, in opposition, that Plaintiffs are not entitled to attorneys' fees as they fail to satisfy the first prong necessary to establish themselves as the prevailing party. (Defendants' Opposition, p. 20).  Specifically, Defendants argue that the relief Plaintiffs obtained was *de minimus* because Plaintiff Thomas Sypniewski graduated from Defendants' school system when the Third Circuit granted Plaintiffs' appeal.  (*Id*.)  Therefore, Defendants argue, Plaintiffs did not receive "any relief whatsoever" that altered their relationship with Defendants. (*Id*.)  In the alternative, Defendants argue that any success the Plaintiffs arguably obtained was *de minimus* as said success was limited to minor alterations to the Harassment and Dress Codes. (*Id*. at 21-23).

Defendants, however, concede that Plaintiffs have met the second prong of causation. (*Id*. at 24).  But Defendants also assert that Plaintiffs voluntary dismissal of remaining counts prevents Plaintiffs from obtaining the status of prevailing party.  (*Id*. at 26).  In conclusion, Defendants counter and seek their own award of attorneys fees, or in the alternative, a reduction of that amount from what Plaintiffs are awarded.  (*Id*. at 32).  This premise is based upon their assertion that in cases where a plaintiff voluntarily dismisses the civil action, fees are often awarded to a defendant as compensation for their necessary defense.  (*Id.*)

The Court is persuaded that attorneys' fees are appropriate under the circumstances. While the Court recognizes that It maintains the discretion to permit or reject a request for fees, It is also mindful that absent special circumstances, a plaintiff "should recover an award of attorneys' fees . . ."  Truesdell v. Philadelphia Housing Authority, 290 F.3d 159, 163 (3d Cir. 2002).  The Court can find no evidence of special circumstances present here, and Defendants do

not so contend.

Further, it is clear that the favorable ruling obtained by Plaintiffs from the Third Circuit caused a material alteration in the legal relationship between the parties by modifying Defendants' behavior in a way that directly benefitted Plaintiffs. Upon the determination of the Third Circuit, Defendants altered their Harassment and Dress Code Policies and were estopped from administering any disciplinary measures against Plaintiffs for wearing the T-shirt in question within Defendants' school system. At the time the Third Circuit ruled, Thomas Sypniewski had graduated from Defendants' school system, and so any relief he did receive that altered his relationship with Defendants was more of a personal satisfaction than a conferred benefit. However, the remaining Plaintiffs were still within the Defendants' school system, having not yet graduated when the Third Circuit ruled. When the ruling issued, those Plaintiffs took an immediate "upper hand" as they were then permitted to wear the T-shirt within Defendants' school system. That relief, a relief Defendants rigorously attempted to prevent, caused an undeniable shift between the parties that resulted in a material alteration between them. Additionally, the Third Circuit determined that the Harassment and Dress Policies were to be altered, signaling yet another shift between the parties that directly affected their legal relationship in favor of Plaintiffs.

The Court further finds that Plaintiffs successfully fulfilled both prongs of the prevailing party test as set forth by the Third Circuit. With regards to the first prong of the Third Circuit test, Plaintiffs have obtained relief on a significant claim of the litigation . . . in fact, several significant claims of the litigation.

Specifically, Plaintiffs' sought injunctive relief to prevent enforcement of the Dress and Harassment Policies which had previously prevented Plaintiffs from wearing an article of

clothing that inferred a particular message.  Plaintiffs obtained that injunctive relief.

Additionally, Plaintiffs sought declarations that the Dress and Harassment policies were

unconstitutional.  Those declarations did not occur, but the Third Circuit determined that the

policies needed alteration as they were "overbroad."  The Third Circuit also found, in

consideration of the District Court's denial of Plaintiffs' injunctive relief, that Plaintiffs would

have likely succeeded on the merits of their claim that the schools' enforcement of the

Harassment Policy so as to prevent the wearing of the T-shirt in question violated the First

Amendment.

      The resulting alterations of the policies and the ability of Plaintiffs to wear the subject T-

shirt constituted the bulk of the relief sought by Plaintiffs.  Further, the counts of Plaintiffs'

Amended Complaint which sought to have the policies declared unconstitutional were dismissed

as moot because Plaintiffs had, in essence, prevailed on those counts after the Third Circuit

issued its determination that the language was overbroad in consideration of the First

Amendment.  Therefore, the remaining counts that were voluntarily dismissed for lack of

interest, were counts for damages.  Those counts were the least legally significant counts of the

Amended Complaint, as evidence by Plaintiffs unwavering conviction regarding their First

Amendment rights, and willingness, ultimately, to forgo any potential financial gain from the

resulting harm the Defendants' actions caused.

      The fact that the resulting change to the Harassment Policy was limited in scope to a two

word deletion, as Defendants assert, is unpersuasive and belittles what the underlying litigation

achieved.  Those two words resulted in a published opinion by the Third Circuit Court of

Appeals.  Those two words made law.

Furthermore, the fact that Plaintiffs voluntarily dismissed mooted and undesired claims within their complaint does not support a contention that Plaintiffs' litigation was frivolous or malicious, as evidenced above.  As such, a voluntary dismissal does not necessarily negate an award of attorneys' fees.  See Coalition for Basic Human Needs v. King, 691 F.2d 597, 600 (1st Cir. 1982); Doe v. Marshall, 622 F.d 118, 199-20 (5th Cir. 1980); Dahlem v. Bd. of Educ., 901 F.2d 1508, 1512 (10th Cir. 1990) (all holding that a plaintiff is a prevailing party when it obtains a preliminary injunction based on its probability of success and the case thereafter becomes moot before a final judgment); 8 Moore's Federal Practice, § 41.40[9][d], Matthew Bender 3d ed.) (stating that after a motion for voluntary dismissal is granted, "the court retains . . . jurisdiction . . . to award attorney's fees under 42 U.S.C. § 1988").

The Court further finds that the second prong of the prevailing party test has been satisfied by Plaintiffs.  There can be no question based upon the litigation history of the underlying civil action that policy changes and the ability to wear the T-shirt in question would not have occurred but for Plaintiffs' efforts.  Defendants concede that Plaintiffs have satisfied the second prong as well, and as such, the Court need not pursue this prong further.

The Court therefore finds that Plaintiffs are the prevailing party of the civil action as that term is defined and further finds that said Plaintiffs are entitled to an award of attorneys' fees. The next phase of the analysis turns to the calculation of the amount of the award.

**B.** **Determining Amount of Award**

**i.** **What Constitutes Fees**

The first step in determining the amount of fees Plaintiffs should be awarded is to determine what constitutes fees.  The Supreme Court has addressed this very question in two separate cases.  In Missouri v. Jenkins, 491 U.S. 274 (1989), the Court considered compensation

for non-lawyer labor and determined that their work should be compensated at the rates at which they were billed to the clients.  The Court stated that "a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar.  Rather, the term must refer to a reasonable fee for the work product of an attorney.  Thus, the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client . . ."  Id. at 285.

### ii.        Method of Calculating the Amount of Fees

In fee-shifting cases such as the attorneys' fees at issue, the Supreme Court has established that the basis of a fee award is the "lodestar" - the number of hours reasonably expended multiplied by the applicable hourly market rate for legal services.  Hensley v. Eckerhart, 461 U.S. 424 (1983); see also Gisbrecht v. Barnhart, 535 U.S. 789, 802 (2002) ("Thus the lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation.").  This method remains intact regardless of whether the plaintiff and the attorney had a private (contingent or hourly) fee contract.  Venegas v. Mitchell, 495 U.S. 82 (1990).  This application applies to work done prefiling, as well as on fee petitions.

### iii.       Reasonable Rate

The reasonable rate is determined by reference to the marketplace.  Missouri v. Jenkins, U.S. at  285  ("we have consistently looked to the marketplace as our guide to what is 'reasonable'").  The Third Circuit, as well as other courts, has held that an attorney's customary billing rate is the proper starting point for calculating fees.  Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985).

14

Exceptions do exist throughout the courts.  Ackerly Communications v. Somerville, 901 F.2d 170, 172  (1st Cir. 1990); Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983) (forum community is the proper yard-stick, so an award for out-of-town counsel will not be based on rates in their usual place of work);  Shakopee Kdewakanton Sioux Cmty. v. City of Prior Lake, Minn., 771 F.2d 1153 (8th Cir. 1985); Davis v. San Francisco, 976 F.2d 1536, 1548 (9th Cir. 1992) (when looking at local counsel, if the usual rate is sharply at odds with the prevailing market rate, courts have discretion to use the latter); Dejesus v. Banco Popular de Puerto Rico, 951 F.2d 3, 6 (1st Cir. 1991) (basing an award on an hourly rate lower than the attorney's usual rate when litigation is outside the attorney's usual field of practice).

However, the Third Circuit has determined that once a party meets its prima facie burden of establishing the "community market rate," and the opposing party does not produce contradictory evidence, the trial court does not have discretion to adjust the requested rate downward.  Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).

Additionally, the Supreme Court has held that counsel is expected to exercise "billing judgment" and that district courts "should exclude from this initial fee calculation hours that were not 'reasonably expended'" including "excessive, redundant, or otherwise unnecessary" work.  Hensley v. Eckerhart, 461 U.S. at 434 (citing in part Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)).

### iv.    Documentation Required

The burden of establishing the lodestar rests on the fee applicant, who must provide appropriate documentation of the hours spent and the market rate.  If the documentation is inadequate, a court may reduce the award accordingly.  Id. at 433.

The Third Circuit has defined what constitutes appropriate documentation by stating that a fee petition should include "fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys.'" Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990) (quoting Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973)). The Third Circuit went on, however, to explicitly reject the requirement of time summaries, stating that a chronological listing of time spent per task is sufficient. Id.

To establish a market rate, the prevailing party must offer evidence that the attorney's usual rate is in line with the market rate in the community. Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). This evidence takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate, Glover v. Johnson, 934 F.2d 703, 718 (6th Cir. 1991), and a court may not vary the rates competently set forth in uncontested affidavits. (Black Grievance Comm. v. Philadelphia Elec. Co., 802 F.2d 648, 657 (3d Cir. 1986) (*vacated on other grounds*, 483 U.S. 1015 (1987)). The market rate to be used is the current prevailing market rate at the time the request for fees is made. Lanni v. New Jersey, 259 F.3d 146, 149-50 (3d Cir. 2001).

###### v.    Lodestar Adjustments

In certain cases, a court may adjust the lodestar upward or downward to arrive at the appropriate fee award. Hensley v. Eckerhart, U.S. at 434. Incomplete success is the most common basis for a downward adjustment in attorneys' fees award. In those cases, a plaintiff advanced discrete, unrelated claims, and prevails on some but not others. Id. The Third Circuit has rejected, however, the downward adjustment of the lodestar for unsuccessful but related claims, finding that the successful and unsuccessful claims were legally or factually intertwined. Northeast Women's Ctr. v. McMonagle, 889 F.2d 466, 475 (3d Cir. 1989); Rode v. Dellarciprete,

16

892 F.2d 1177, 1185-86 (3d Cir. 1990) (holding that hours expended on claims against dismissed defendants are compensable "if 'plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim[s] against' the defendants over whom plaintiff prevailed . . ."). Upward adjustments, however, can be based upon exceptional results or quality of representation in exceptional circumstances.  Hensley v. Eckerhart, U.S. at 434;  Awarding Attorneys' Fees and Managing Fee Litigation, 2nd Ed. (2005).

### vi.    Forum Rate and Documentation Provided

In support of their request for attorneys' fees, Plaintiffs submit that the forum rate for the underlying case at issue is the District of New Jersey, not the Southern District of New York which is the location of Plaintiffs' attorneys' firm.  This Court agrees.  See Pub. Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1187 (3d Cir. 1995).

Plaintiffs further submit several exhibits in support of their attorneys' fees claims including:  affidavits of two attorneys which detail the prevailing rates for the District of New Jersey for attorneys comparable to those who performed services for Plaintiffs in this case (Exhibits B and C of Plaintiffs' Motion); an article and chart from the September 2005 issue of the New Jersey Law Journal reflecting billing rates at law firms in New Jersey for the year 2005 (Exhibit D of Plaintiffs' Motion); and submissions to the bankruptcy court of the District of New Jersey by comparably sized New Jersey based law firms which set forth hourly rates for New Jersey attorneys (Exhibits E, F and G of Plaintiffs' Motion).  The Court finds that these submissions satisfy the requirements as set forth in Rode v. Dellarciprete, 892 F.2d at 1190.

### vii.   Reasonable Current Prevailing Market Rate

With regard to reasonable hourly rates, Plaintiffs propose as follows: Gerald Walpin, Esq. (lead counsel) - $553.33; Matthew Parrott, Esq. - $329.16; Catherine Patsos, Esq. (senior

associate) - $300.00; Alexis Cirel, Esq. - $212.00; Keely Herrick, Esq. (then summer associate) - $225.83; David Stoner, Esq. (then summer associate; now junior associate) - $150.00 and $204.00; Lorraine Collazo (paralegal) - $162.50;  Ann Marie Weiss (paralegal) - $162.50; Elena Paraskevas - Thadini, Esq. (former associate) - $323.33;  Gilly Nadel, Esq. (former associate) - $327.50; Ellen Cohen, Esq. (former associate) - $323.00; and Jason Halper, Esq. (former associate) - $271.67.

Defendants argue that those rates are excessive, and provide an affidavit of Joel A. Kobert, Esq., an experienced attorney and member of the New Jersey bar since 1970.  Mr. Kobert's affidavit states that the highest hourly rate for senior associates and/or partners in Northwest New Jersey is $350.00.  Mr. Kobert further attests that the hourly rate for associates ranges from $175.00 to $225.00 an hour and that the paralegal rate is $95.00 an hour.

Plaintiffs own references, offered as exhibits to their Motion, provide ranges of $350.00 to $595.00 per hour for partners, $190.00 to $345.00 per hour for associates and $160 to $175.00 per hour for paralegals at New Jersey's largest firms.  (Plaintiffs' Motion, Exhibits B - D).

Because the parties differ as to what the current prevailing market rate is for partners, associates and paralegals, this Court can and will depart from Plaintiffs proposed rates.  Black Grievance Comm. v. Philadelphia Elec. Co., 802 F.2d 648, 657 (3d Cir. 1986) (*vacated on other grounds*, 483 U.S. 1015 (1987)).  The Court will utilize the average means for partners and associates as set forth in the New Jersey Law Journal, September 26, 2005 publication (Plaintiff's Motion, Exhibit D).  There the Journal polled ten of the largest New Jersey firms, including Archer & Greiner, Connell Foley, Fox Rothschild and Pitney Hardin, and came up with an average mean of $394.00 per hour for partners and $235.00 per hour for associates based upon what those firms charged.  The Court finds this method of determination of the current prevailing

18

market rate to be the most reasonably calculated.  Further, the Court finds that an average of the proposed rates by Plaintiffs and Defendants establishes a reasonable market rate for paralegals, which, based on the numbers provided by Plaintiffs and Defendants, is $135.00 per hour.  That rate shall be applied to summer associates as well.

### viii.   Hours Reasonably Expended

In support of the hours spent by each individual for the underlying case at bar, Plaintiffs submit three exhibits (Plaintiffs' Motion, Exhibits I - K) consisting of computer generated print-outs from Plaintiffs' firm, Katten Muchin Rosenman.  Plaintiffs argue that these are the hours spent by each of the aforementioned staff members, excluding unlitigated claims and time dedicated to the media[1], and further argue that they are reasonable.

Defendants object and argue that duplicitous staffing occurred throughout the litigation, including the taking of depositions, where two and sometimes three attorneys attended when only one was needed.  Defendants further argue that the length of time claimed to be spent by Plaintiffs' attorneys for certain projects, including the Complaint and Order to Show Cause, as well as certain correspondences, is excessive.

The Court finds that the hours listed by Plaintiffs regarding litigation documentation are reasonable.  Although the Court will not engage in a line-by-line justification for each billable submitted by Plaintiffs for document preparation, some of the examples referenced by Defendants will be addressed.[2]

---

[1]  The Court notes Plaintiffs' concession that they had inadvertently included an hour of media time in Ms. Nadel's July 2, 2001 billable hours.  That hour shall be deducted from Ms. Nadel's billable tally.

[2]  The Court did conduct a line-by-line review of the hours submitted by Plaintiffs, but will speak in generalities for the purposes of this Opinion in the interest of brevity.

Specifically, the 100 hours spent on preparing the Complaint and Order to Show Cause is not excessive when the length of those documents (55 pages combined) and, more importantly, the importance of those documents is considered.  A civil complaint is perhaps the most important document filed in a civil action.  It lays the ground work for what the allegations are, broken down into counts for possible future separate consideration in partial summary judgment motions, settlements and discovery issues.  Complaints provide the factual and legal basis for the alleged claims of wrongdoing, and the litigations' survival in a motion to dismiss is predicated on it.  Furthermore, a complaint becomes the road map for both the parties and the jury at trial.

Additionally, substantive correspondence can be important to a litigation as well.  If a letter is not carefully and correctly worded, it can later be used against the drafting party in discovery disputes, as exhibits in motions to dismiss, and even at trial.  The Court would be hard pressed to locate a single firm that doesn't carefully craft and then check and re-check with several of the firms' members any substantive correspondence.  In fact, the Court suspects that the Defendants themselves submit to that practice.

The Court does not find, however, that the hours listed for depositions are reasonable when more than two attorneys attend, or when summer associates are present.  Depositions are indeed a precious discovery tool, and to be careless in treatment of them would be a disservice to the client.  Further, the limited number of depositions permitted in federal court requires additional care and thought by counsel to adequately represent their client.  However, there is a not-so-fine line between appropriate caution and excess.

By Plaintiffs own admission, "[p]laintiffs at most depositions had present one attorney and one summer associate . . . [f]or one morning, a second (senior) attorney was present for the start of the depositions."  (Plaintiffs' Motion, p. 13).  Although the role of the attorney present at

the deposition is undebatable, the role of the summer associate is.

Summer associates are generally not practicing attorneys.  They are not licensed.  They generally assist attorneys at a firm by researching and writing memoranda and briefs.  They are incapable by law to actively participate in a deposition.  Any purpose a summer associate could serve at a deposition would be limited to physical assistance and moral support.  The presence of a summer associate at a deposition is generally limited in benefit to the summer associate as a learning experience.  The client obtains little or no benefit from their presence.  And although the Court applauds any instructional efforts Plaintiffs' firm takes, the Defendants should not be left to bear the resulting onus of Plaintiffs generosity.  As such, Plaintiffs' billable hours shall be reduced accordingly.  See Davis v. Southeastern Pa. Transp. Auth., 924 F.2d 51, 56 (3d Cir. 1991) (reduction of billable hours because of unnecessary work by a trial consultant); Goodwin v. Metts, 973 F.2d 378, 383-84 (4th Cir. 1992) (fees cut in half because firm used several attorneys where one or two would have sufficed).

### ix.        Lodestar Amount Adjustments

To determine whether the lodestar amount should be adjusted, two inquiries must be made.  "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  Hensley at 434.

The Court finds that all claims made by Plaintiffs in their Amended Complaint were related to one another, and as previously discussed at length, Plaintiffs did prevail on the main counts of their claims.  The Court further finds, as also previously discussed, that Plaintiffs did reach a "level of success" which makes the reasonably expended hours a satisfactory basis for the fee award.  Therefore, Plaintiffs have satisfied both prongs of the Hensley analysis and no

21

adjustments to the lodestar amount are necessary.[3]

        **x.**    **Costs**

Plaintiffs request that this Court award, pursuant to Fed. R. Civ. P. 54(d)(2), additional non-taxable expenses, including photocopying expenses, telephone expenses, travel time and expense and postage to Plaintiffs in addition to the mandated award of taxable costs by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1).  The Court will so award.  The amount of taxable and non-taxable costs to be awarded shall be $50, 811.30.[4]

---

[3]  The Court rejects Defendants' request for a deduction of Plaintiffs' attorneys' fees in the amount of Defendants' fees.  There is no basis in law for such a deduction.

[4]  This amount is based upon a review of Plaintiffs' Motion, Exhibit K, which the Court finds is a reasonable summary of taxable and non-taxable expenditures Plaintiffs encountered during the course of litigation.

V.      **CONCLUSION AND ORDER**

For the foregoing reasons, it is on this 18th day of May, 2006, hereby

**ORDERED** that Defendants shall pay Plaintiffs attorneys' fees in the amount of

$574,244.60, which includes this Court's calculated lodestar amount (including litigation

regarding the instant motion) and taxable and non taxable costs.[5]


s/Tonianne J. Bongiovanni
_____   **HONORABLE TONIANNE J. BONGIOVANNI**
                                  **UNITED STATES MAGISTRATE JUDGE**


---

[5]  Specifically, the calculation is based on the holdings above, including prefiling efforts, litigation efforts and attorneys' fees efforts, and are as follows:
        Mr. Walpin (Partner) - 569.7 hours X $394.00 per hour ='s $224,461.80
        Mr. Parrot (Associate) - 186.2 hours X $235.00 per hour ='s $43,757.00
        Ms. Patsos (Associate) - 37.4 hours X $235.00 per hour ='s $8,789.00
        Ms. Cirel (Associate) - 183.9 hours X $235.00 per hour ='s $43,216.50
        Ms. Herrick (Summer Associate) - 20.7 hours X $135.00 per hour ='s $2,794.50
        Mr. Stoner (Summer Associate with Deposition Subtraction) - 164.5 hours X $135.00 per hour ='s $22,207.50
        Mr. Stoner (Associate) - 127.2 hours X $235.00 per hour ='s $29,892.00
        Ms. Paraskevas-Thadini (Associate) - 56.6 hours X $235.00 per hour ='s $13,301.00
        Ms. Nadel (Associate) - 253.4 hours X $235.00 per hour ='s $59,549.00
        Ms. Cohen (Associate) - 20.8 hours X $235.00 per hour ='s $4,888.00
        Mr. Halper (Associate) - 230.3 hours X $235.00 per hour ='s $54,120.50
        Ms. Collazo (Paralegal) - 102 hours X $135.00 per hour ='s $13,770.00
        Ms. Weiss (Paralegal) - 19.9 hours X $135.00 per hour ='s $2,686.50
        Taxable and Non-Taxable Costs - $50,811.30